UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED
APR 1 2 2006
LESLIE G. WHITAKER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-246-GWU

LOIS GOOSEY, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Goosey

4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

Goosey

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

Goosey

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

Goosey

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The administrative law judge (ALJ) found that Goosey suffered from carpal tunnel syndrome, back pain and obesity. (Tr. 20). Based on the opinions of the consultative examiner and state agency physicians, he concluded that the plaintiff could perform a limited range of medium level work. (Tr. 21). Since she could still do her past relevant jobs of assistant manager, laundry worker and desk clerk, she was not entitled to benefits, according to the ALJ. (Tr. 21-23).[1]

First, the Court must analyze the nature of the plaintiff's past work. The vocational expert did not discuss these jobs, other than to identify the past work as (1) a light level, semi-skilled assistant hotel manager, (2) a heavy level, unskilled housekeeper, (3) a medium level, unskilled laundress, (4) a heavy level, semi-skilled maintenance person and (5) a light level, semi-skilled desk clerk. (Tr. 193). Since

---

[1] No alternative jobs were identified, so the case must stand or fall on the past work issue.

7

Goosey

the ALJ relied on only the light and medium jobs, further scrutiny of these (i.e., assistant hotel manager, laundress and desk clerk) must be had. Unrefuted by the VE's sparse testimony were the plaintiff's statements that the manager/desk clerk job involved eight hours of handling small objects a day (Tr. 59) or, in other words, constant handling; she also stated that, doing the hotel laundry might involve doing 400 rooms' worth of laundry, putting/reaching laundry into machines and then transferring it similarly into the dryers. (Tr. 184). Thus, significant amounts of reaching or handling were involved in these jobs by the plaintiff's own description.[2]

The ALJ seemingly also recognized a need for at least limiting fine manipulation and handling to an unspecified degree in his findings (Tr. 22), but did not analyze this specifically in terms of the nature of the past work.

Moreover, a review of the medical evidence reveals that handling and reaching restrictions were applicable to the plaintiff. One treating source, Alam Khan, declared the plaintiff disabled for any job (Tr. 124); while the full extent of his opinion may not be binding, this does suggest further limitations than were cited by the ALJ, given Khan's reference to decreased upper extremity strength (Tr. 124) and Tinel's sign (Tr. 129, 133), abnormal cervical spine MRI (Tr. 93) and EMG results

---

[2]This common sense interpretation of putting laundry in and out of machines as reaching or handling is seemingly confirmed by a review of Laundry Worker I, Dictionary of Occupational Titles, §361.684-014, which shows frequent reaching, handling and fingering as part of the duties of that job.

8

Goosey

showing bilateral carpal tunnel syndrome (Tr. 126). Another physician, arguably also a treating source, noted "significant" limitations in handling, reaching and fingering (Tr. 164), with similar citations of cervical degenerative joint disease and carpal tunnel syndrome (Tr. 161). Of the conflicting physicians' opinions cited by the ALJ in support of his decision, two were mere non-examiners, who expressed no opinion about treating or examining source statements regarding physical capacity (Tr. 144, 151) which, according to Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994), is not authoritative. The third contrasting "information" came from a consultative examiner, who did not clearly voice his own capacity assessment statement and appeared totally unaware of some of the objective evidence relied upon by the treating sources.[3]

The case must be remanded for further consideration of the reaching and handling restrictions suffered by the plaintiff vis-a-vis alternative jobs.

This the __12__ day of April, 2006.

_____
G. WIX UNTHANK
SENIOR JUDGE

---

[3]The consultative examiner, for example, specifically states in the report he dictated in August, 2003 that the patient had "an MRI that she claims revealed spurring." (Tr. 98) (emphasis added). A radiologist's report on a March, 2003 MRI ordered by one of the treating physicians appears as part of Exhibit 2 in which the impression of spurring and mild narrowing at the neuroforamina at several levels of the cervical spine was noted (Tr. 93).

9